GOSHORN, Chief Justice.
Mark Wilson appeals the order modifying the final judgment of divorce. He argues, inter alia, that the trial court abused its discretion in extending the initial term of rehabilitative alimony payments an additional three years. We agree and reverse.
When the parties were divorced in November 1986, the final judgment of dissolution of marriage incorporated their property settlement agreement, which included a rehabilitative alimony provision. Prior to the signing of the settlement agreement, the former wife received vocational rehabilitation counseling and decided on a career in nursing. The parties contemplated it would take her three years to accomplish this goal and accordingly settled on a 36 month rehabilitative alimony period.
The former wife received her Associate of Arts degree in nursing from Seminole Community College in June 1989, three months prior to the expiration of the 36 month period. She did not seek employment after graduation because she had decided that nursing was too physically demanding for her and because it would require night and weekend work and she did not want to leave three teenagers home alone. She had interviewed at two hospitals prior to graduation and had telephoned a third and all three hospitals advised that there were R.N. positions available.[1] Rather than obtain employment, the former wife decided to continue her education another two and a half years to obtain a degree in medical records administration. Pursuant to her new plan, the 39 year old former wife moved the trial court to modify the final judgment to extend the period of rehabilitative alimony. The trial court found that the former wife had not been fully rehabilitated and was in need of an additional 36 months of rehabilitative alimony at $1,000 per month.
This court has held:
A rehabilitative alimony award is essentially a projection based upon certain assumptions and probabilities. If these assumptions and probabilities develop as predicted within the projected term, the spouse should be able to support himself or herself. To entitle the spouse to a modification, either to extend the rehabilitative alimony period or to convert the rehabilitative alimony to permanent alimony, he or she must show why the court’s original assumptions were defective and why things did not work out as planned.
O’Neal v. O’Neal, 410 So.2d 1369, 1371 (Fla. 5th DCA 1982). The party seeking the extension of rehabilitative alimony must show that he or she has not been rehabilitated despite reasonable and diligent efforts. Reaves v. Reaves, 514 So.2d 1147 (Fla. 2d DCA 1987); Lee v. Lee, 309 So.2d 26 (Fla. 2d DCA 1975). In determining whether the party has been rehabilitated, the trial court should consider
the spouse’s progress towards achieving financial independence, the spouse’s health, the existence of any disabilities, the market for the spouse’s skills, and whether additional training is required. The trial judge should also consider the paying spouse’s ability to continue the alimony payments and the receiving spouse’s good faith efforts to rehabilitative himself or herself.
Saez-Ortiz v. Saez-Ortiz, 560 So.2d 1375, 1376 (Fla. 5th DCA 1990), citing Reaves, 514 So.2d at 1148-49. A review of case law involving extensions of rehabilitative alimony shows that a spouse who has completed the rehabilitation plan is entitled to an additional period of rehabilitation only *1181 upon proof of unforeseen extenuating circumstances. See Blumberg v. Blumberg, 561 So.2d 1187 (Fla. 3d DCA 1989) (extension of alimony period appropriate upon wife’s showing of unanticipated and substantial medical and hospital expenses and her demonstrated need for a recuperative period, even though she had completed law school as planned); Reaves, supra (the former wife alleged a proper predicate for extension of alimony where she demonstrated a good faith attempt to become self-supporting but due to serious illness had failed); Mann v. Mann, 523 So.2d 804 (Fla. 3d DCA 1988) (evidence that the former wife had diligently, albeit unsuccessfully, attempted to obtain better employment, and was working two part-time jobs but still was unable to pay her mortgage and utility bills and had sold $20,000 of personal assets to make ends meet, was sufficient to support a continuance of rehabilitative alimony).
The plan envisioned at the time of the final judgment was that the former wife would return to college to be trained as a registered nurse. She fulfilled the goal, earning a 3.8 grade point average along the way, only to decline readily available employment upon graduation. She has acquired the skills necessary for self-support and there is no evidence that had she accepted employment, she could not have maintained her previous standard of living. To the contrary, there was evidence she would have started her career earning between $20,000 and $23,000 annually and that there were RN positions available that did not require nights or weekend work and that did not require a high level of physical exertion. Under the facts presented here, there is simply no legal basis for extending her rehabilitative alimony term. The goal envisioned by the parties and the original trial court judge has been met. We conclude that the trial court abused its discretion in extending the rehabilitative alimony term.
We find the remaining issues raised by the appellant to be without merit and affirm the order-of modification, except as it extends the term of the rehabilitative alimony.
AFFIRMED in part; REVERSED in part; REMANDED.
DAUKSCH and PETERSON, JJ., concur.

. Ken Bradley, the compensation manager for Florida Hospital, testified there were approximately 190 R.N. positions available at all times. The hours and shifts vary and starting salary is approximately $11.45 per hour ($23,800 annually). Positions are available that do not require great physical exertion or weekend hours, he testified.